UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-80803-Civ-MARRA/JOHNSON

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

vs.

WILLIAM BETTA, JR., TRAVIS
A. BRANCH, JAMES J. CAPRIO,
TROY L. GAGLIARDI, RUSSELL
M. KAUTZ, BARRY M. KORNFELD,
SHANE A. MCCANN, CLIFFORD A.
POPPER, ALFRED B. RUBIN, and
STEVEN I. SHRAGO,

      Defendants.
_____/

## ORDER AND OPINION DENYING RUSSELL KAUTZ'S MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant Russell M. Kautz's Motion to

Dismiss for Improper Venue, or Alternatively to Transfer Venue, and/or to Drop

Defendant From Action for Misjoinder [DE 21]. The Court has carefully considered the

motion and response. No reply was filed.

**Introduction**

The Securities and Exchange Commission ("SEC") brings this action to restrain

and permanently enjoin Russell M. Kautz, William Betta, Jr., Travis A. Branch, James

J. Caprio, Troy L. Gagliardi, Barry M. Kornfeld, Shane A. McCann, Clifford A. Popper,

Alfred B. Rubin, and Steven I. Shrago (collectively, "Defendants") from violating the

antifraud provisions of the federal securities laws. Compl. ¶ 1. The SEC seeks a

judgment from the Court: (a) enjoining Defendants from engaging, directly or

indirectly, in further violations of Section 17(a) of the Securities Act and Section

10(b) of the Exchange Act and Rule 10b-5 thereunder; (b) ordering Defendants to

disgorge, with prejudgment interest, the amount by which they were unjustly

enriched as a result of their violations of the federal securities laws; and (c) ordering

Defendants to pay civil monetary penalties pursuant to Section 20(d) of the Securities

Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §

78u(d)(3).  Compl. ¶ 6.  Four of the defendants have moved to dismiss the complaint.

This Opinion addresses the motion to dismiss of Russell Kautz ("Kautz").

**Factual Background**

The complaint alleges, and the Court accepts as true for purposes of the

instant motion, the following:  Kautz and nine other former registered

representatives of now defunct broker-dealer Brookstreet Securities Corp.

("Brookstreet"), made material misrepresentations to customers in connection with

the offer, sale, or purchase of risky types of collateralized mortgage obligations

("CMOs") called Inverse Floaters, Interest Onlys ("IOs"), and Inverse IOs (collectively,

"Program CMOs").  From January 2004 to June 2007, Brookstreet sponsored a program

which allowed Defendants to invest their customers' funds in CMOs.  Brookstreet

touted this program to its brokers at its annual product marketing conferences.

Compl. ¶ 23.

The CMO Program was operated by Brookstreet's Institutional Bond Group ("Bond Group").  Compl. ¶ 22.  Kautz and other Brookstreet brokers who wanted to participate in the CMO Program contacted the Bond Group to have their customers' accounts "designated for management."  ¶ 24.  This group executed CMO trades for all Brookstreet CMO customers, regardless of where their particular broker was located.  Compl. ¶ 35.  Movant Kautz resides in Medford, Oregon and he was a registered representative in Brookstreet's Medford office from January 2003 through June 2007.  Compl. ¶ 11.

The Bond Group was headed by Clifford Popper ("Popper") and located in Boca Raton, Florida.  Compl. ¶ 22.  Popper selected which CMOs would be bought or sold.  Compl. ¶ 35.  His trade recommendations were relayed to Brookstreet's brokers, who returned signed trade tickets to indicate that their customers had consented to the proposed trades.  *Id.*  The Bond Group typically purchased large blocks ("round lots") of CMOs that they would subsequently apportion into smaller positions ("odd lots") for distribution into the accounts of individual customers.  Compl. ¶ 36.  Before a sale, the Bond Group typically aggregated these odd lots into round lots, which were easier to trade.  *Id.*  Because CMO Program customers held odd lots that could not be readily traded, they often faced liquidity problems and delays of up to one year when they wanted to sell their positions outside the regular sales process.  Compl. ¶ 37.

Kautz participated in the CMO Program and recommended CMOs to his customers.  Compl. ¶¶ 24, 28.  Kautz had 13 CMO Program accounts.  Compl. ¶ 28.  To persuade customers to invest in CMOs, Defendants, including Kautz, made a series of misrepresentations regarding the nature of the investment.  For example, in May and September 2005, Kautz misrepresented to customers that Program CMOs were guaranteed by the federal government and that they were "government-backed AAA-rated bonds."  Compl. ¶ 42.  Kautz also told his customers that CMOs carried little risk to principal and were a liquid investment.  Compl. ¶¶ 42, 44.  In fact, the CMOs purchased for the accounts of Brookstreet customers were risky, volatile, illiquid, and deemed unsuitable for all but the most sophisticated retail investors.  Compl. ¶¶ 29-34.

Brokers were paid a commission on each CMO trade executed by the Bond Group.  Compl. ¶ 40.  Kautz was paid $344,770 in commissions based on the CMO trades on the accounts of his customers.  *Id*.  When CMO prices dropped in early 2007, many Brookstreet CMO customers received margin calls.[1]  Compl. ¶ 48.  Because the Defendants had over leveraged their customers' accounts, many customers could not cover the margin calls, resulting in a total deficit or negative equity of $36 million for all of Brookstreet's customers in the CMO Program.  Compl. ¶ 50.

------------------------------------------------------------

[1]  The SEC explains that a margin call is a demand that more money or securities be deposited in a customer's margin account when the amount in the margin account falls below the amount necessary to cover the securities purchased. DE 23 at 3 n.3.

Brookstreet agreed to accept responsibility for the margin calls that its customers could not cover.  When Brookstreet's efforts to respond to these margin calls caused Brookstreet to fall below its net capital requirements, Brookstreet had to shut its doors.  Compl. ¶ 51.  The SEC brings this suit against Kautz alleging that Kautz recommended and sold CMOs to his customers even though he knew, or should have known, that the highly risky CMOs he was selling were unsuitable for his customers and he failed to disclose the risks of these investments to his customers.  Compl. ¶¶ 43-45, 53, 57.

In his motion, Kautz, proceeding pro se, argues that venue as to him is not proper in this district.  Alternatively, Kautz maintains that the Court should exercise its discretion and transfer the case against him to the District of Oregon.  Finally, Kautz asserts that he has been misjoined and must therefore be dropped from the action.  The Court will deny Kautz's motion in its entirety.

**Pleading Requirements**

The Eleventh Circuit requires a plaintiff alleging securities fraud under Rule 10b-5[2] to plead (1) a false statement or omission of material fact; (2) made with

---

[2]  Section 10(b) of the Securities and Exchange Act of 1934 ("§ 10(b)") makes it "unlawful for any person . . . to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commissioner may prescribe."  15 U.S.C. § 78j (2000).  Pursuant to this authority, Rule 10b-5 makes it unlawful for any person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light

scienter; (3) upon which the plaintiff justifiably relied; (4) that proximately caused the plaintiff's injury." *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1446 (11th Cir. 1997); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

As with any fraud claim, a plaintiff must plead the circumstances of the conduct with particularity.  See Fed.R.Civ.P. 9(b); *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).  Complaints alleging falsity "shall specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).  Additionally, a complaint must present facts from which "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007); *see also* 15 U.S.C. § 78u-4(b)(2).  In this circuit, scienter consists of intent to defraud or "severe recklessness" on the part of the defendant.  *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, __ F.3d __, Case No. 09-10954, 2010 WL 154519, *4 (11th Cir. Jan. 19, 2010); *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989).

---

of the circumstance under which they were made, not misleading, or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5.

<u>Discussion</u>

**A.      Venue**

Kautz argues that because he is a resident of Oregon, venue in the Southern District of Florida is improper as to him.  Alternatively, Kautz requests that the Court "change venue to Oregon for the convenience of the parties and witnesses and in the interest of justice." DE 21 at 4.  A transfer of venue is completely within the discretion of the trial court and the decision to deny a change of venue request will be reversed only for abuse of discretion.  *United States v. Kopituk*, 690 F.2d 1289, 1322 (11th Cir.1982), *cert. denied*, 461 U.S. 928 (1983).

Section 27 of the Securities Exchange Act of 1934 permits suits to enforce the federal securities laws to be filed in any district "wherein any act or transaction constituting the violation occurred" or "where the defendant is found or is an inhabitant or transacts business."  15 U.S.C. § 78aa.  Similarly, § 22(a) of the Securities Act of 1933 authorizes actions "in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein. . . ."  15 U.S.C. § 77v(a).  Kautz argues that none of the acts or transaction constituting the alleged violation by him occurred within Florida, but rather in Oregon where he lives and worked for Brookstreet.

It is not necessary that Kautz have transacted business or sold securities in the Southern District of Florida himself for venue to be proper here.  This case involves a

fraudulent scheme, a material part of which allegedly took place in Brookstreet's
Boca Raton office.  The alleged mastermind behind the scheme, Cliff Popper,
operated out of the Boca Raton office.  Popper selected the unsuitable CMOs that
were bought and sold in the accounts of all Brookstreet customers.  Compl. ¶ 25.  The
staff of Brookstreet's Boca Raton office executed the CMO trades for all CMO Program
participants.  Compl. ¶ 22.  It is alleged that brokers such as Kautz persuaded their
customers to invest in CMOs, signed trade tickets authorizing the Bond Group to
execute CMO trades in their customers' accounts, and collected hundreds of
thousands of dollars in commissions based on the CMO trading in those accounts.
Compl. ¶¶ 24, 35, 40.

    Because this case involves a fraudulent scheme, and a material part of the
scheme allegedly took place in Boca Raton, venue is proper here even over the
objections of a "defendant [who] did not perform any independent venue-establishing
act or transaction in the district."  *First Fed. Savings & Loan Ass'n v. Oppenheim,
Appel, Dixon & Co.*, 634 F.Supp. 1341, 1350 (S.D.N.Y. 1986); *see also, S.E.C. v.
Carriba Air, Inc.*, 681 F.2d 1318, 1323 (11th Cir. 1982) (filing of allegedly false and
misleading registration statement or prospectus constituted "act or transaction
constituting violation" within meaning of federal statute governing venue in
securities regulation actions).  "[I]n a multi-defendant securities proceeding, where a
common scheme of acts or transactions to violate the securities act is alleged, if
venue is established for any of the defendants in the forum district there is sufficient

justification to establish venue as to the other defendants, even in the absence of any contact or substantial contact by any one defendant within that district." *Hilgeman v. National Ins. Co. of America*, 547 F.2d 298, 302 (5ᵗʰ Cir. 1977)[3] quoting *S.E.C. v. National Student Marketing Corp.*, 360 F.Supp. 284, 291-92 (D.D.C. 1973). Venue is proper in this district because the allegedly unsuitable securities were traded in this district, and those trades are a key element of the alleged violations.

Kautz alternatively urges the Court to exercise its authority under 28 U.S.C. § 1404(a) and transfer the case against him to the District of Oregon. Although Oregon would be an alternate venue for Kautz, it would be an improper forum for the remaining nine defendants. As the Eleventh Circuit stated in *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843 (11ᵗʰ Cir. 1988), a case that Kautz cited in his brief, "[g]iven the judicial system's great concern with the efficient conduct of complex litigation, an important consideration in deciding appropriate venue is whether a forum can meet the personal jurisdiction and venue requirements for most or all of the defendants in a multi-party lawsuit." *Id* at 857. In *Delong*, the Eleventh Circuit held that venue in the Northern District of Georgia was proper even though the defendants' residence or primary place of business were in Connecticut, Florida, or Massachusetts. *Id.* The court reasoned that the case could not be transferred

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

because not all defendants had contacts with any of the potential alternative fora. *Id.*

It appears that same problem would exist here.  Kautz does not assert that the other defendants had any contact with Oregon.  By contrast, all of the defendants, by virtue of their participation in the CMO Program, did business through the Bond Group in Boca Raton and thus have ties to this district.  *See* Compl. ¶ 22.  Moreover, seven of the ten defendants are located in Florida.  Compl. ¶¶ 7-16.  Finally, trying the claims against Kautz separately in another forum would not  enhance the convenience of the parties and witnesses.  Trying the case against all defendants in a single forum promotes the public interest because single trials generally tend to lessen the expense and inconvenience to all concerned.

**B.      Joinder**

Finally, Kautz contends that he should be dismissed from the action for "misjoinder of parties."  Kautz argues that Federal Rule of Civil Procedure 20 provides that defendants may only be joined in a lawsuit if there is asserted against them jointly, severally, or in the alternative, any right to relief arising out of the same transaction or occurrence.  He maintains that none of the relief asserted against the defendants is "jointly, severally, or in the alternative."  DE 21 at 11.

Rule 20(a) creates two tests for joinder.  One, there must be some question of law or fact common to all parties which will arise in the action; and two, there must be some right to relief asserted on behalf of each of the plaintiffs, and against each

of the defendants, relating to, or arising out of, a single transaction or occurrence or series of transactions or occurrences.  These tests are cumulative and both of them must be satisfied to permit joinder.  20 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure (4th ed. 2009).  These two tests are satisfied in this case.  This action is being brought by one plaintiff, the SEC, against the Defendants for a  series of trade transactions made by the Bond Group.  Moreover, "[t]he option given by Rule 20 to join the defendants in one action did not create joint liability.  The permitted joinder is procedural and not substantive."  *Texas Emp. Ins. Ass'n v. Felt*, 150 F.2d 227, 231 (5th Cir. 1945).[4]  Accordingly, Kautz's final argument is rejected.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant Russell M. Kautz's Motion to Dismiss for Improper Venue, or Alternatively to Transfer Venue, and/or to Drop Defendant From Action for Misjoinder **[DE 21] is DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 15th day of March, 2010.

KENNETH A. MARRA
United States District Judge

copies to:
All counsel of record
All pro se parties

---

[4]  *See supra* note 3.