UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-80803-Civ-MARRA/JOHNSON

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

vs.

WILLIAM BETTA, JR., TRAVIS
A. BRANCH, JAMES J. CAPRIO,
TROY L. GAGLIARDI, RUSSELL
M. KAUTZ, BARRY M. KORNFELD,
SHANE A. MCCANN, CLIFFORD A.
POPPER, ALFRED B. RUBIN, and
STEVEN I. SHRAGO,

    Defendants.
_____/

## ORDER AND OPINION DENYING TROY GAGLIARDI'S MOTION TO DISMISS

THIS CAUSE is before the Court upon the Answer and Motion to Dismiss of Troy L. Gagliardi ("Gagliardi") to Complaint for Injunctive and Other Relief and Demand for Jury Trial [DE 56].[1] The Court has carefully considered the motion and response, and is otherwise fully advised in the premises. No reply was filed.

---

[1] Defendant Gagliardi's motion is incorporated in his Answer and is included in the "Affirmative Defenses" section of said pleading. Gagliardi's "Motion to Dismiss" does not comply with Local Rule 7.1, which requires that all motions to dismiss be accompanied by a memorandum of law citing supporting authorities. The Court has made an attempt to decipher which arguments are made as possible grounds for dismissal and which arguments are raised as affirmative defenses. "[G]enerally, the existence of an affirmative defense will not support a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993).

**Introduction**

The Securities and Exchange Commission ("SEC") brings this action to restrain and permanently enjoin Troy L. Gagliardi, William Betta, Jr., Travis A. Branch, James J. Caprio, Russell M. Kautz, Barry M. Kornfeld, Shane A. McCann, Clifford A. Popper, Alfred B. Rubin, and Steven I. Shrago (collectively, "Defendants") from violating the antifraud provisions of the federal securities laws.  Compl. ¶ 1.  The SEC seeks a judgment from the Court: (a) enjoining Defendants from engaging, directly or indirectly, in further violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; (b) ordering Defendants to disgorge, with prejudgment interest, the amount by which they were unjustly enriched as a result of their violations of the federal securities laws; and (c) ordering Defendants to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).  Compl. ¶ 6.  Four of the defendants have moved to dismiss the complaint. This Opinion addresses the motion of Troy L. Gagliardi.

**Factual Background**

The complaint alleges, and the Court accepts as true for purposes of the instant motion, the following:  Gagliardi and nine other former registered representatives of now defunct broker-dealer Brookstreet Securities Corp. ("Brookstreet"), made material misrepresentations to customers in connection with the offer, sale, or purchase of risky types of collateralized mortgage obligations

("CMOs") called Inverse Floaters, Interest Onlys ("IOs"), and Inverse IOs (collectively, "Program CMOs").  Compl. ¶ 2.  From January 2004 to June 2007, Brookstreet sponsored a program which allowed Defendants to invest their customers' funds in CMOs.  Compl. ¶ 20.  The CMO Program was operated by Brookstreet's Institutional Bond Group ("Bond Group"), which was located in Boca Raton, Florida.  Compl. ¶ 22-27.  In addition to his role as a registered representative, Gagliardi had 31 customer accounts in the CMO Program.  *Id*.

The Bond Group primarily traded three types of particularly risky CMOs for Brookstreet's CMO Program:  Inverse Floaters, IOS, and Inverse IOS.  Compl. ¶¶ 30-34.  Over 90% of all purchases in the CMO Program between 2004 and 2007 were these risky Program CMOs.  Compl. ¶¶ 30-34.  In addition, 14% of the Program CMOs traded by the Bond Group on behalf of CMO Program customers were non-agency CMOs that carried no government backing.  Compl. ¶ 30.  The Bond Group selected the Program CMOs that would be traded on behalf of all CMO Program customers.  Compl. ¶ 35.  The Bond Group executed all Program CMO trades for CMO Program customers.  Compl. ¶ 35.

The Bond Group typically purchased large blocks ("round lots") of CMOs that they would subsequently apportion into smaller positions ("odd lots") for distribution into the accounts of individual customers.  Compl. ¶ 36.  Before a sale, the Bond Group typically aggregated these odd lots into round lots, which were easier to trade.  *Id*.  Because CMO Program customers held odd lots that could not be readily traded,

they often faced liquidity problems and delays of up to one year when they wanted to sell their positions outside the regular sales process.  Compl. ¶ 37.

Gagliardi told customers that Program CMOs were guaranteed by the United States government when they were not.  Compl. ¶ 42.  He also told customers that Program CMOs carried little risk to principal and could be sold at any time.  Compl. ¶¶ 43-44.  In addition, Gagliardi misrepresented that Program CMOs were safe and appropriate for retirement accounts.  Compl. ¶ 45.  Gagliardi further told customers that because Program CMOs were backed by the government, their CMO accounts were essentially immune to margin calls.  Compl. ¶ 47.  In fact, the Program CMOs purchased for Brookstreet customers were risky, volatile, illiquid, and deemed unsuitable for all but the most sophisticated investors with a high-risk profile.  Compl. ¶¶ 29-34.

Brokers were paid a commission on each CMO trade executed by the Bond Group.  Compl. ¶ 40.  During the life of the CMO Program, Gagliardi received CMO commissions totaling more than $3.3 million.  *Id*.

When CMO prices dropped in early 2007, many Brookstreet CMO customers received margin calls.[2]  Compl. ¶ 48.  Because the Defendants had over leveraged their customers' accounts, many customers could not cover the margin calls, resulting

---

[2]  The SEC explains that a margin call is a demand that more money or securities be deposited in a customer's margin account when the amount in the margin account falls below the amount necessary to cover the securities purchased.  DE 23 at 3 n.3.

in a total deficit or negative equity of $36 million for all of Brookstreet's customers in the CMO Program. Compl. ¶ 50. Brookstreet agreed to accept responsibility for the margin calls that its customers could not cover. When Brookstreet's efforts to respond to these margin calls caused Brookstreet to fall below its net capital requirements, Brookstreet had to shut its doors. Compl. ¶ 51.

The SEC brings this suit against Gagliardi alleging that Gagliardi recommended and sold CMOs to customers even though he knew, or should have known, that the highly risky CMOs he was selling were unsuitable for these customers and he failed to disclose these risks. Compl. ¶¶ 43-45, 53, 57.

## Pleading Requirements

The Eleventh Circuit requires a plaintiff alleging securities fraud under Rule 10b-5[3] to plead (1) a false statement or omission of material fact; (2) made with scienter; (3) upon which the plaintiff justifiably relied; (4) that proximately caused the plaintiff's injury." *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1446 (11th

---

[3] Section 10(b) of the Securities and Exchange Act of 1934 ("§ 10(b)") makes it "unlawful for any person . . . to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commissioner may prescribe." 15 U.S.C. § 78j (2000). Pursuant to this authority, Rule 10b-5 makes it unlawful for any person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstance under which they were made, not misleading, or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

Cir. 1997); *see also SEC v. Merchant Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007); *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

As with any fraud claim, a plaintiff must plead the circumstances of the conduct with particularity. See Fed.R.Civ.P. 9(b); *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006). Complaints alleging falsity "shall specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Additionally, a complaint must present facts from which "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007); *see also* 15 U.S.C. § 78u-4(b)(2). In this circuit, scienter consists of intent to defraud or "severe recklessness" on the part of the defendant. *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, __ F.3d __, Case No. 09-10954, 2010 WL 154519, *4 (11th Cir. Jan. 19, 2010); *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989).

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff, to the extent they are uncontroverted by defendants' affidavits. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988); *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). Because Gagliardi did not

submit an affidavit in support of his motion, the Court accepts the facts alleged in the complaint as true.

**Discussion**

In his "motion," Gagliardi, proceeding *pro se*, makes many of the same arguments raised by William Betta in his Motion to Dismiss. These arguments were rejected by the Court in its Opinion and Order Denying William Betta's Motion to Dismiss. The Court incorporates those parts of its Opinion and Order Denying William Betta's Motion to Dismiss which addresses any identical arguments raised by Gagliardi, including the argument that the complaint fails to state a claim upon which relief can be granted, that the SEC has failed to plead securities fraud with sufficient particularity, or that the SEC must and has failed to plead reliance. Just as with Betta, the complaint alleges that Gagliardi misrepresented to customers that:

- Program CMOs were backed by the United States Government.  Compl. ¶ 42;

- Program CMOs could not lose principal unless the United States economy failed.  Compl. ¶ 43.

- Program CMOs were easily traded and could be sold at any time, but failed to inform customers of the inherent illiquidity associated with the odd lot positions they held in their accounts.  Compl. ¶ 44;

- Program CMOs were safe investments that were appropriate for a retirement account.  Compl. ¶ 45; and

- Using margin to purchase Program CMOs was safe, posed no risk to principal, and would not expose the customer's account to possible margin calls.  Compl. ¶¶ 46-47.

Moreover, the complaint alleges that Gagliardi made these representations to customers in connection with the offer, sale, or purchase of securities, *see* Compl. ¶¶ 2, 30, 35-36, 41-42, and that he did so with scienter.  Compl. ¶¶ 43-45.  Taken as true, these allegations are sufficient to establish violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.

Finally, Gagliardi claims that the SEC lacks authority to bring this action, which he mischaracterizes as a suit "to enforce the NASD, currently known as FINRA, rules relating to 'suitability.'"  DE 55 at 12, ¶ 6.  The SEC's suit seeks to enforce the antifraud provisions of the federal securities laws, not the NASD's rules regarding suitability.  The SEC undisputably has authority to pursue fraud claims under Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act.  The fact that such fraud claims may be based on facts which also may give rise to suitability violations does not divest the SEC of its authority.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Motion to Dismiss of Troy L. Gagliardi **[DE 56] is DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 15th day of March, 2010.

                               KENNETH A. MARRA
                               United States District Judge

copies to:
All counsel of record
All pro se parties